UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re LEHMAN BROTHERS HOLDINGS INC.*, <br><br> Debtor, | Bankruptcy Case <br> No. 08-13555 (SCC) |
| ATTESTOR CAPITAL LLP, <br><br> Appellants, <br><br> -v.- <br><br> LEHMAN BROTHERS HOLDINGS INC., *et al.*, <br><br> Appellee. | 18 Civ. 7682 (KPF) |
| DEUTSCHE BANK AG, <br><br> Appellants, <br><br> -v.- <br><br> LEHMAN BROTHERS HOLDINGS INC., *et al.*, <br><br> Appellee. | **OPINION AND ORDER** <br><br><br><br> 18 Civ. 7804 (KPF) |

KATHERINE POLK FAILLA, District Judge:

These related appeals are the latest chapters in the multi-year, multinational bankruptcy saga of Lehman Brothers Holdings Inc. ("Appellee" or "LBHI"), its affiliates, and its creditors across the globe. This is not the first appeal from the LBHI bankruptcy to be filed in this District, but it differs from many of its predecessors in its focus on the interplay between the proceedings in the United States Bankruptcy Court for the Southern District of New York (Chapman, *B.J.*), and certain insolvency proceedings in the United Kingdom. Appellants, Attestor Capital LLP and Deutsche Bank AG (collectively, "Appellants"), sought to recover in the U.K. on their claims against Appellee's

subsidiary, Lehman Brothers International (Europe) ("LBIE").  When those efforts proved only partially successful, Appellants sought to recover in the U.S. from Appellee, which served as guarantor for certain of LBIE's claims.  Such recovery depended on whether certain statutory interest payments that had been received by Appellants under U.K. law qualified as "consideration provided on [LBIE's] corresponding Primary Claim" under LBHI's operative plan (the "Plan").  United States Bankruptcy Judge Shelley C. Chapman found that the interest payments qualified, and thus concluded that Appellants were not entitled to additional recovery from LBHI under the Plan.  Appellants appeal from the Bankruptcy Court's decision; for the reasons set forth in this Opinion, this Court affirms that decision.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    The Parties

Appellee Lehman Brothers Holdings Inc. is the parent company of a once "global business" that "guaranteed certain obligations of its hundreds of

---

[1]    This Opinion makes numerous citations to materials found in the dockets of this Court and the Bankruptcy Court.  Citations to the Bankruptcy Court's docket for the Chapter 11 petition, Case No. 08-13555 (SCC), are presented using the convention "2008 Bankr. Dkt. #[docket entry]"; citations to the Bankruptcy Court's docket for the Chapter 15 petition, Case No. 18-11470 (SCC), are presented using the convention, "2018 Bankr. Dkt. #[docket entry]"; and citations to this Court's docket, Case No. 18 Civ. 7682 (KPF), are presented using the convention "Dkt. #[docket entry]."  The Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc and Its Affiliated Debtors (2008 Bankr. Dkt. #22973) is referred to as the "Plan."

For ease of reference, Appellants' joint brief on appeal is referred to as "Appellants Br." (Dkt. #11); Appellee's brief on appeal as "Appellee Opp." (Dkt. #13); and Appellants' reply brief as "Appellants Reply" (Dkt. #14).  Citations to the record on appeal are presented using the convention "A[page]" for cites to the Appendix (Dkt. #12-1) and "SA[page]" for cites to the Supplemental Appendix (Dkt. #13-1).  The parties' briefs

subsidiaries around the world." (Appellee Opp. 7). Lehman Brothers International (Europe) is a subsidiary of Appellee, but is not itself a Debtor[2] in LBHI's Chapter 11 proceedings in this District (the "U.S. Proceedings"). (*Id.* at 8).

Appellant Attestor Capital LLP is a subsidiary of parent corporation Attestor. (Appellants Br. iii). Appellant Deutsche Bank AG is a publicly held parent company organized under German law with numerous affiliates. (*Id.*). Both parties were involved in Lehman-related insolvency (or "administration") proceedings against LBIE in the United Kingdom (the "U.K. Proceedings") and against Appellee in the U.S. Proceedings.

### 2. The Lehman Bankruptcy Proceedings

In September 2008, Appellee and its subsidiaries filed for bankruptcy in various jurisdictions throughout the globe. (*See generally* A244-304 (Order Confirming Plan)). On September 15, 2008, Appellee filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this District. (2008 Bankr. Dkt. #1). On the same day, its subsidiary, LBIE, commenced

---

submitted to the Bankruptcy Court in connection with Appellee's motion for an order in aid of execution of the Plan are referred to as "Appellee Bankr. Br." (2008 Bankr. Dkt. #58381) and "Appellants Bankr. Opp." (2008 Bankr. Dkt. #58449).

[2] Several defined terms from the Plan are capitalized in this Opinion and defined in the footnotes. According to the Plan, the term "Debtor" is limited to the following entities:

> BNC, CES, CES V, CES IX, East Dover, LB 745, LB 2080, LB Rose Ranch, LBCC, LBCS, LBDP, LBFP, LBHI, LBSF, LCPI, LOTC, LS Finance, LUXCO, Merit, PAMI Statler, Preferred Somerset, SASCO and Somerset, each in its individual capacity as debtor and debtor in possession in its Chapter 11 Case pursuant to sections 101(13), 1107(a) and 1108 of the Bankruptcy Code.

(Plan § 1.38). Accordingly, LBIE is not a Debtor under the Plan.

administration proceedings in the United Kingdom pursuant to the English Insolvency Act of 1986.  (2018 Bankr. Dkt. #4, ¶¶ 1, 10).

### a.  The U.K. Proceedings

Hundreds of creditors — including Appellants — held claims (the "Primary Claims")[3] against LBIE, the Primary Obligor[4] in the U.K. Proceedings. (Appellants Br. 4).  Many of these creditors also held claims (the "Guarantee Claims")[5] against Appellee arising from the latter's guarantee of various Primary Claims against LBIE.  (A003).

Appellees' Primary Claims against LBIE were originally denominated in U.S. Dollars ("USD") and other foreign currencies.  According to English law, however, only British Pounds Sterling ("GBP") could be used to value claims in insolvency proceedings.  *See* Rule 14.21, Insolvency (England and Wales) Rules 2016 (formerly Rule 2.86 of the rules then applicable).  Accordingly, the claims against LBIE were converted to GBP and the exchange rate for USD was set — and would remain the same for the entirety of the U.K. Proceedings — at the exchange rate applicable on the day the proceeding commenced (the "Commencement Date").

---

[3]   A "Primary Claim" is defined as "a Claim against a Primary Obligor for which a corresponding Guarantee Claim has been asserted."  (Plan § 1.125).

[4]   A "Primary Obligor" is defined as "an entity other than LBHI that is purportedly obligated or liable on a Claim with respect to which a Guarantee Claim has been asserted."  (Plan § 1.126).

[5]   A "Guarantee Claim" is defined as "a Claim asserted against LBHI on the basis of a guarantee, promise, pledge, indemnity or similar agreement by LBHI (a) to satisfy an obligation or liability of another entity or (b) with respect to asset values, collection or net worth of another entity."  (Plan § 1.62).

### i. **The Exchange Rate Debt and the Surplus**[6]

By 2014, LBIE had paid virtually all of its outstanding debts to its creditors, including the allowed (or "admitted") amount of Appellants' Primary Claims.  (A025-26).  During this time, however, two issues had arisen:  *First*, from 2008 to 2014, the British pound had weakened against the U.S. dollar, which caused a shortfall in the value of the claims (which Appellants have termed the "Exchange Rate Debt") once the currency was converted back to USD.  (*Id.*).  The parties do not dispute the fact of the Exchange Rate Debt (though Appellee quibbles with the nomenclature); all agree that the shortfall equates to approximately $12.89 for every $100.00 LBIE owed to Appellants on their allowed Primary Claims.  (*See* Appellants Br. 16; Appellee Opp. 12).  *Second*, after LBIE finished paying the claims, it found itself with a surplus of funds (the "Surplus").  (*See* Appellants Br. 15; Appellee Opp. 8-9).  Pursuant to U.K. Insolvency Rule 14.23(7) (formerly Insolvency Rule 2.88), LBIE was required to distribute the Surplus to their creditors in the form of statutory interest payments.  (*See also* SA057).

### ii. **The *Waterfall* Proceedings**

Several parties to the U.K. Proceedings brought actions (the "*Waterfall* Proceedings") to decide, *inter alia*, how best to resolve the shortfall and allocate the statutory interest payments among LBIE's respective creditors.  Two of

---

[6]     Although both sides refer to the distribution of the Surplus in the U.K. Proceedings as the "Subsequent LBIE Distribution," to prevent conflation of meaning with the Court's later discussion of certain Plan terms, the Court will refer to the surplus of funds as just that, the "Surplus."

these proceedings — termed *Waterfall I* and *Waterfall IIA* — have potential relevance to the issues now before this Court. *See generally In re Lehman Brothers International (Europe) No. 5* (Ch D) [2016] Bus LR 17 ("*Waterfall IIA*"); *Joint Administrators or Lehman Brothers Limited* v. *Lehman Brothers International (Europe) (In Administration) and others* [2017] UKSC 38 ("*Waterfall I*").[7]

## A.  Waterfall I

For clarity of analysis, the Court addresses the decisions in reverse chronological order. *Waterfall I* focused, in relevant part, on whether Appellants, as unsecured creditors, could assert a currency conversion claim (including a claim for the Exchange Rate Debt) in the U.K. Proceedings. (*See Waterfall I*, ¶¶ 73-112). The U.K. Supreme Court made plain that, in the U.K. Proceedings, Appellants could not "seek to claim as a non-provable debt, the difference between the sterling value of the debt at the [Commencement Date] and the sterling value of the debt when paid." (*Id.* at ¶ 112).

## B.  Waterfall IIA

*Waterfall IIA*, which was issued earlier in time, focused in relevant part on whether the statutory interest payments required by English law could be used to discharge the Exchange Rate Debt. (*See Waterfall IIA*, ¶¶ 226-31). Although the issue itself became moot once the U.K. Supreme Court in

---

[7]     *Waterfall IIA*, which was issued by the English High Court, Chancery Division, on July 31, 2015, is included as Annex 2 to Appellants' Brief (*see* Dkt. #12 at 1-59), while *Waterfall I*, which was issued by the English Supreme Court on May 17, 2017, is included as Annex 3 to Appellants' Brief (*id.* at 60-133). Both decisions comprise numbered paragraphs, and that is how the Court cites to them.

*Waterfall I* foreclosed Appellants from recovering under a currency conversion claim theory, the case contained several holdings that Appellants claim are relevant to the instant appeal. In particular, in *Waterfall IIA*, the High Court, Chancery Division, concluded that a "currency conversion claim is not a claim for damages, it is a claim for payment of the unpaid portion of its debt." (*Id.* at ¶ 230). From this, the High Court concluded that, even if a "subsequent payment of interest … produced a higher sum than the contractual entitlement," that interest could not be used to "discharge the earlier unpaid debt." (*Id.*).

### iii.    The Scheme of Arrangement

Following the *Waterfall* Proceedings, the parties agreed to enter into a "scheme of arrangement" (the "Scheme") that allowed for the "expedited payment" of statutory interest to LBIE's creditors. (2008 Bankr. Dkt. #58836). On June 18, 2018, the High Court approved the Scheme. (2018 Bankr. Dkt. #13).

Concurrent with its negotiation of the Scheme, LBIE filed a Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief (the "Chapter 15 Petition") in the Bankruptcy Court on May 14, 2018. (2018 Bankr. Dkt. #1). On June 19, 2018, the day after the Scheme was approved by the High Court, Judge Chapman approved the Chapter 15 Petition and recognized the U.K. Proceedings as a foreign main proceeding. (2018 Bankr. Dkt. #15). In relevant part, Judge Chapman "recogniz[ed], grant[ed] comity to, and [gave] full force and effect within the territorial

7

jurisdiction of the United States to the English Proceeding, the Scheme and the Sanction Order." (*Id.*; *see also id.* ("The Scheme and the Sanction Order (including the Releases) granted in the English Proceeding" were "recognized, granted comity and given full force and effect in the" U.S. Proceedings.)).

As noted, LBIE was required under English law to pay the Surplus as interest; under the Scheme, LBIE paid post-petition interest of at least 8 percent per annum on each creditor's admitted claims against LBIE. (SA090; A612). In light of the length of time it had taken LBIE to pay off the claims in the U.K. Proceedings, the total compensation paid by LBIE to Appellants, regarding both principal debt and statutory interest payments, amounted to approximately 138.43% of their allowed Primary Claims. (SA090).

### b. The U.S. Bankruptcy Proceedings

### i. The Chapter 11 Proceedings

As is obvious from the chronology, Judge Chapman's approval of the Chapter 15 Petition occurred after she and other judges had presided over nearly ten years of Lehman-related bankruptcy litigation in this District.

### A. *The Plan*

Though the U.S. and U.K. Proceedings were filed on the same day in September 2008, they advanced on different tracks. On December 5, 2011, the parties to the U.S. Proceedings entered into the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), which governed, *inter alia*, how and to what extent Appellee would be liable for debts unpaid by its subsidiaries in foreign bankruptcy

proceedings.  The Bankruptcy Court approved and entered an order confirming the Plan on December 6, 2011.  (2008 Bankr. Dkt. #23023).

In this appeal, the parties dispute certain language (the "Disputed Language") found in Section 8.13 of the Plan, entitled "Maximum Distribution," and its application to the Exchange Rate Debt and statutory interest payments stemming from the U.K. Proceedings.  (Plan § 8.13).  In relevant part, Section 8.13 governs when and how Appellants' Guarantee Claims against LBHI have been "deemed satisfied":

> An ... Allowed Guarantee Claim that receives Distributions[8] ... that combined with ... Distributions or *other consideration provided on the corresponding Primary Claim* ... equal the Allowed amount of such Guarantee Claim ... shall, in each case, be deemed satisfied in full as to such ... Allowed Guarantee Claim against the applicable Debtor.

*Id.* (emphasis added).  Here, the parties disagree as to whether the statutory interest payments required by English law qualify as "other consideration provided on the corresponding Primary Claim."  If they do, then Appellants' Guarantee Claims are "deemed satisfied in full," and Appellants have no right to recover the value of the Exchange Rate Debt in the U.S. Proceedings.[9]  If

---

[8]   The term "Distribution" is defined as "any initial or subsequent payment or transfer made under the Plan."  (Plan § 1.47).  Because LBIE is not a Debtor, it is unable to make Distributions under the Plan.  For this reason, the parties have focused on whether the statutory interest payments qualify as "other consideration provided on the corresponding Primary Claims."  (*Id.* at § 8.13).

[9]   The parties do not dispute that the statutory interest payments already paid to Appellants by LBIE equal or exceed the total value of the Exchange Rate Debt.  (*See generally* Appellants Br.; Appellee Opp.).

they do not, then Appellee, as guarantor, would be required to compensate Appellants in the U.S. Proceedings for the value of the Exchange Rate Debt. *Id.*

## B. The Estimation Motions

On June 10, 2015, and February 23, 2017, Appellee LBHI filed estimation motions (the "Estimation Motions") asking the Bankruptcy Court to value the Guarantee Claims pertaining to the Exchange Rate Debt at zero. (2008 Bankr. Dkt. #49954, 54904). Appellants filed objections to each motion. (2008 Bankr. Dkt. #50602, 55085, 55088). The Bankruptcy Court granted Appellee's Estimation Motions only with respect to those claims not objected to by any claimant, which meant, as a practical matter, that Appellants' claims against LBHI remained pending. (2008 Bankr. Dkt. #50329, 50824, 50948, 50977, 50978, 55162).

On October 18, 2017, Appellee withdrew the Estimation Motions that pertained to Appellants' claims and Appellants subsequently withdrew their objections. (2008 Bankr. Dkt. #56837, 56838). In so doing, the parties limited their disputes over the Guarantee Claims to the single issue of the proper interpretation of Section 8.13.

## C. The Chapter 15 Petition and the August 2018 Hearing

This remaining issue was resolved in the summer of 2018. On June 19, 2018, Judge Chapman recognized the U.K. Scheme as a foreign main proceeding under Chapter 15. On July 10, 2018, Appellee filed a motion with Judge Chapman for an order in aid of execution of the Plan, which motion sought a judicial determination that the statutory interest payments made by

LBIE in the U.K. Proceedings qualified as "other consideration provided on the corresponding Primary Claim" within the meaning of Section 8.13(a), and thus could be deemed to satisfy Appellants' Guarantee Claims stemming from the Exchange Rate Debt. (2008 Bankr. Dkt. #58381, 58572). Appellants jointly opposed Appellee's motion. (2008 Bankr. Dkt. #58449).

### i.     *The Parties' Arguments*

On August 15, 2018, Judge Chapman issued an oral decision granting Appellee's motion. (Dkt. #12-1 (Revised Transcript of August 14, 2018 Hearing Regarding Plan Administrator's Motion for an Order in Aid of Execution of the Plan ("Hearing Tr."))). Before she did, she received extensive written and oral submissions from the parties.

At the outset, the parties disagreed as to the scope of the issue. Appellants framed the issue broadly as "whether the recent payments of statutory interest should or should not be credited against LBHI's obligation to true up [Appellants'] recovery in USD as part of their Guarantee Claims." (Appellants Bankr. Opp. ¶ 19). This, Appellants argued, required the Bankruptcy Court to take into account the U.K. courts' decisions in the *Waterfall* Proceedings. (Hearing Tr. 13-15).

On this point, Appellants argued that (i) since the interest arose by operation of English law, and (ii) the U.K. High Court had stated in *Waterfall IIA* that interest payments were a "separate and distinct claim" that could not be used to discharge principal debt, the interest payments could not be used to satisfy the Guarantee Claims under Section 8.13 of the Plan. (Hearing Tr. 18-

19).  And in response to Judge Chapman's question of whether the interest payments would have been paid were it not for the Primary Claims against LBIE, Appellants emphasized that such payments were "not because of the claim itself....  It's compensatory for the delay of receiving the payment in full of that primary claim....  It's correct that it was determined by reference to the claim admitted, but it's a completely independent and separate right."  (*Id.* at 16).

In further support of their position, Appellants contended "that the term 'on,' in the phrase 'consideration provided on the corresponding primary claim,' is used to describe the relationship between a payment and an obligation," for which the interest payments do not qualify under English law.  (Hearing Tr. 16).  Instead, they argued, the term "consideration" in the Disputed Language must refer to a payment that is "given in exchange for something, and this statutory interest payment was not bargained for," since it was both statutorily required and designed to remedy the separate injury of delayed receipt of payment.  (*Id.* at 21-22).

For its part, Appellee posited that the dispute was strictly an issue of "Plan interpretation," one in which the nature of the statutory interest payments, the language and purpose of Section 8.13(a), and "guarantee law's well established 'single satisfaction' rule" made clear that the interest payments qualified as "other consideration" under the Plan.  (Appellee Bankr. Br. ¶ 26). According to Appellee, the "only question is, is it consideration on the claim? We don't see any other reading that [doesn't] torture, that doesn't ignore the

definition" of interest under the Plan or that "distribution does include interest in most of the [P]lan." (Hearing Tr. 33).

Reviewing the Plan, Appellee observed that "[n]either the word 'consideration' nor the word 'on' is limiting." (Hearing Tr. 11-12). And in other sections of the Plan, the word "distribution" specifically included interest payments. These provisions, according to Appellee, meant that Appellants were essentially asking the Bankruptcy Court to define interest differently — and inconsistently with other portions of the Plan — as it pertains to Section 8.13(a). (*Id.* at 29).

Appellee clarified that it was not arguing that the interest payments were to be considered part of Appellants' Primary Claims. (Hearing Tr. 29). Indeed, it noted, even the Plan's own "provision for post-petition interest" did not go so far as to construe interest to be part of a Primary Claim. (*Id.*). Instead, Appellee argued that the Plan's provision on post-petition interest made clear that interest of any type was to be considered a payment *on* Appellants' Primary Claims. (*Id.*; *see also id.* at 29-30 (contending that statutory interest "provided by LBIE … on account of, because of, but for — the primary claim," was paid "on" the Primary Claims and thus qualified under Section 8.13(a)); *id.* at 30 ("It wasn't gratuitous.")).

Appellee also addressed the weight, if any, to be given the U.K. Proceedings. Unsurprisingly, Appellee asked the Bankruptcy Court to accord the High Court's findings in the *Waterfall* Proceedings no weight, since (i) the currency conversion claim had ultimately been "determined not to exist" by the

13

U.K. Supreme Court, and (ii) the conclusions in *Waterfall IIA* were mere "dicta" that "would've been overruled" on appeal had the U.K. Supreme Court not mooted the dispute entirely in *Waterfall I.* (Hearing Tr. 28).

Alternatively, Appellee argued that even if the Bankruptcy Court were to give weight to the *Waterfall* Proceedings, English insolvency law itself uses the word "on" when describing the relationship between interest and primary claims. (Hearing Tr. 30 (noting that U.K. insolvency rules state that "interest is paid on a primary claim")). Thus, in addition to contravening the Plan, Appellants' position would contravene the very U.K. law that they espoused. (*Id.*).

### ii.     The Bankruptcy Court's Decision

Ultimately, Judge Chapman agreed with Appellee and rejected Appellants' reliance on the U.K. Proceedings. She found first that the scope of the discussion was limited to "whether or not" interest payments in general constituted "other consideration" under Section 8.13(a) of the Plan. (Hearing Tr. 14). Judge Chapman concluded that the Disputed Language was "very simple and straightforward," and that Appellants had tried to impute "meanings into words that clearly [are] not there." (*Id.* at 34).

Next, Judge Chapman found that the statutory interest payments qualified as "other consideration provided on the corresponding Primary Claim" under Section 8.13(a), and, therefore, that the Guarantee Claims were to be "deemed satisfied." (Hearing Tr. 34). Having resolved the parties' dispute in this manner, she found it "[un]necessary to debunk or address in detail any

additional arguments made by the parties." (*Id.*).  For avoidance of doubt, however, Judge Chapman made clear that her interpretation of the Plan was also "consistent with the single satisfaction rule." (*Id.*).[10]

## B.    Procedural Background

Appellants filed notices of appeal on August 20, 2018, which were received by this Court three days later.  (2008 Bankr. Dkt. #58581, 58587). Pursuant to scheduling orders issued by this Court (*see, e.g.*, Dkt. #4), Appellants filed their brief on appeal on November 9, 2018 (Dkt. #11); Appellee filed its brief in opposition on December 14, 2018 (Dkt. #13); and Appellants filed their reply brief on January 11, 2019 (Dkt. #14).

## DISCUSSION

## A.    The Standard of Review

Under 28 U.S.C. § 158(a), district courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts; *see also In re Santiago-Monteverde*, 512 B.R. 432, 436 (S.D.N.Y. 2014) ("On appeal, the court may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings" (internal

---

[10]    During the hearing, Judge Chapman asked Appellants why they were the only creditors of several from the *Waterfall* Proceedings that still raised this claim, noting that others had "failed" with these types of arguments based on interpretation of Plan provisions. Appellants responded that the decisions of other creditors in this matter were irrelevant and, even so, such decisions may not have been because they "adopted [Appellee's] interpretation" of the Plan.  (Hearing Tr. 16-18).  The litigation decisions of other creditors of LBHI or LBIE did not inform the Bankruptcy Court's ultimate decision and, similarly, do not inform this Court's analysis on the instant appeal.

quotation marks and citation omitted)).[11]  When a district court sits as an

"'appellate court in a bankruptcy case,'" its rulings "'are subject to plenary

review.'"  *In re Belmonte*, No. 18-2098-bk, — F.3d —, 2019 WL 3330808, at *4

(2d Cir. July 25, 2019) (quoting *Denton* v. *Hyman (In re Hyman)*, 502 F.3d 61,

65 (2d Cir. 2007)).  "'The factual determinations and legal conclusions of the

[b]ankruptcy [c]ourt are, therefore, reviewed independently by this Court.' ...

We review the bankruptcy court's findings of fact for clear error and its legal

conclusions *de novo*."  *Id.*

A confirmed Chapter 11 plan is treated as a binding contract on all

parties to the plan.  *See Adelphia Recovery Tr.* v. *Bank of Am., N.A.*, 390 B.R.

80, 88 (S.D.N.Y. 2008) (citing *In re Victory Mkts., Inc.,* 221 B.R. 298, 303 (2d

Cir. BAP 1998) ("[A] confirmed plan holds the status of a binding contract as

between the debtor and its creditors....  As with any contract, the starting point

for review of a plan is its plain language.  Unless some ambiguity is to be found

---

[11]    This Court noted in a prior bankruptcy appeal that these powers, which were once enumerated in Federal Rule of Bankruptcy Procedure 8013,

> now flow from a new source.  As courts in this Circuit have recognized, the Federal Rules of Bankruptcy Procedure were amended, effective December 1, 2014, by order of the Supreme Court.  *See Bosman* v. *Glod*, No. 6:15-CV-1036 (GLS), 564 B.R. 443, 446 n.4 (N.D.N.Y. 2017) (citing Order Amending Fed. R. Bankr. P. (Apr. 25, 2014), http://www.supremecourt.gov/orders/ courtorders/frbk14_d28l.pdf.); *In re Great Atl. & Pac. Tea Co., Inc.*, No. 14 Civ. 4170 (NSR), 2015 WL 6395967, at *2 n.1 (S.D.N.Y. Oct. 21, 2015) (same).  Rule 8013, which previously governed this Court's appellate powers, was removed and replaced with a modified version of what had been Rule 8011.  *In re Great Atl. & Pac. Tea Co., Inc.*, at *2 n.1.  However, this Court agrees with others considering this change that abundant case law and "logic still compel[ ] the same conclusion with respect to the appellate powers of the District Court."  *Id.*

*In re Margulies*, 566 B.R. 318, 329 (S.D.N.Y. 2017), *aff'd*, 721 F. App'x 98 (2d Cir. 2018) (summary order).

within the plan itself, the Court has no basis to look beyond its text." (internal citations omitted)), *aff'd,* No. 98-5033, 1999 U.S. App. Lexis 7647 (2d Cir. 1999)), *aff'd*, 379 F. App'x 10 (2d Cir. 2010) (summary order). "When interpreting a confirmed plan, the principles of contract law apply." *In re AMR Corp.*, 562 B.R. 20, 28 (Bankr. S.D.N.Y. 2016) (quoting *MF Glob. Holdings Ltd* v. *PricewaterhouseCoopers LLP*, 43 F. Supp. 3d 309, 313 (S.D.N.Y. 2014) (internal quotation marks omitted)).

Under New York law, the interpretation of a contract "is a matter of law for the court to decide." *Int'l Multifoods Corp.* v. *Commercial Union Ins. Co.,* 309 F.3d 76, 83 (2d Cir. 2002) (internal quotations omitted); *see also In re Motors Liquidation Co.*, 500 B.R. 333, 339 (S.D.N.Y. 2013), *aff'd*, 578 F. App'x 43 (2d Cir. 2014) (summary order). Thus, a district court reviews a bankruptcy court's determination of whether "a contract is ambiguous and the meaning of an unambiguous contract" *de novo. In re Motors Liquidation Co.*, 500 B.R. at 339; *see Hatalmud* v. *Spellings*, 505 F.3d 139, 145 (2d Cir. 2007); *accord In re Delphi Corp.,* 394 B.R. 342, 344 (S.D.N.Y. 2008). Conversely, "[w]here ... a contract is ambiguous, its interpretation in the presence of extrinsic evidence of meaning is a question of fact. Therefore, a district court may reverse a bankruptcy court's interpretation of an ambiguous contract only if it is clearly erroneous." *In re Frontier Ins. Grp., Inc.*, 598 B.R. 87, 97 (S.D.N.Y. 2019) (quoting *In re Motors Liquidation Co.*, 500 B.R. at 339) (internal quotation marks omitted).

The Bankruptcy Court and the parties found that the Disputed Language is not ambiguous. After reviewing the Plan and the record on appeal, the Court agrees. As such, this Court reviews the Bankruptcy Court's legal determinations *de novo*.

## B. Analysis

### 1. Overview

Despite extensive discussion by the parties of the U.K. Proceedings, this appeal, at base, deals with the U.S. Proceedings — and, more specifically, the interpretation of Section 8.13 of the Plan. For this reason, the Court begins by observing that, in the absence of Section 8.13, Appellants' arguments regarding the purpose, significance, and proper interpretation of the statutory interest payments would have had additional traction. And even in the context of this appeal, the Court agrees with Appellants that the purpose of the statutory interest payments is to serve as remediation for LBIE's delay in repaying their principal debt. The Court also agrees that these payments are qualitatively different from the distributions Appellants received from LBIE in satisfaction of the Primary Claims. The fact remains, however, that this Court is not, and the Bankruptcy Court was not, operating on a blank slate, but rather both courts are bound by the terms of the Plan.

Appellee argues, as expected, that the Disputed Language of Section 8.13 should be construed to cover the broadest range of payments that could be used to satisfy any outstanding Guarantee Claims owed by Appellee to LBIE's creditors. After all, the more forms of consideration that Section 8.13 covers,

the less exposure Appellee has to LBIE's creditors.  Appellants argue, also as expected, that the Disputed Language should be construed as narrowly as possible, so that they may benefit from receiving not only the statutorily granted interest on LBIE's Primary Claim, but also additional compensation from Appellee to cover the value of the Exchange Rate Debt.  The Court was mindful of these tensions in undertaking its analysis.

What the parties do not dispute is that a shortfall occurred, and that by dint of currency fluctuations, Appellants effectively lost 13 cents from every U.S. dollar they received in the U.K. Proceedings.  The parties also do not dispute that Appellee has paid no Distributions to satisfy any potential Guarantee Claims raised against it by Appellants, including any claims arising from this shortfall.  And, as discussed above, the question of Appellants' entitlement to additional recovery on their claims distills to whether these statutory interest payments qualify as "other consideration provided on the corresponding Primary Claim" pursuant to Section 8.13(a).  The Court concludes that they do so qualify.

### 2. The Court Has Given Appropriate Consideration to the Decisions in the *Waterfall* Proceedings

#### a. Applicable Law

In some instances, a choice-of-law analysis may be necessary to determine if it is appropriate to apply international comity to a bankruptcy proceeding.  *See generally In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036, 1049 (2d Cir. 1996).  The doctrine of comity

is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other.  But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

*Id.* at 1046 (quoting *Hilton* v. *Guyot,* 159 U.S. 113, 163-64 (1895)).  "Comity is a doctrine that takes into account the interests of the United States, the interests of the foreign state, and those mutual interests the family of nations have in just and efficiently functioning rules of international law."  *Id.* at 1048.

Under this principle, "United States courts ordinarily refuse to review acts of foreign governments and defer to proceedings taking place in foreign countries," so long as "the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy."  *Pravin Banker Assocs., Ltd.* v. *Banco Popular Del Peru,* 109 F.3d 850, 854 (2d Cir. 1997); *accord Victrix S.S. Co., S.A.* v. *Salen Dry Cargo A.B.,* 825 F.2d 709, 713 (2d Cir. 1987).  The Second Circuit has "repeatedly noted the importance of extending comity to foreign bankruptcy proceedings.  Since '[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding,' American courts regularly defer to such actions."  *Finanz AG Zurich* v. *Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999) (quoting *Victrix,* 825 F.2d at 713-14); *see also Allstate Life Ins. Co.* v. *Linter Grp. Ltd.*, 994 F.2d 996, 999 (2d Cir. 1993) ("[W]e have recognized that comity is particularly appropriate where, as here, the court is confronted with foreign

bankruptcy proceedings."); *Cunard S.S. Co.* v. *Salen Reefer Servs. AB,* 773 F.2d 452, 458 (2d Cir. 1985).

That said, the doctrine of international comity only comes into play "when there is a true conflict between American law and that of foreign jurisdiction." *In re Maxwell*, 93 F.3d at 1049. And "since comity is an affirmative defense," its proponent carries "the burden of proving that comity was appropriate." *Allstate Life Ins. Co.,* 994 F.2d at 999.

### b. Analysis

For completeness, the Court has considered the relevance of the Chapter 15 Order and its attendant provisions granting comity to the U.K. Proceedings, especially since the parties dispute the relevance of the *Waterfall* Proceedings to the instant litigation. When Judge Chapman approved the U.K. Proceedings as a "foreign main proceeding," she also "recogniz[ed], grant[ed] comity to, and [gave] full force and effect within the territorial jurisdiction of the United States to the English Proceeding, the Scheme and the Sanction Order." (2018 Bankr. Dkt. #15). Appellants claim that this Court should be guided by the characterization of the statutory interest in the *Waterfall* Proceedings. Appellee counters that the *Waterfall* Proceedings are irrelevant and, in the alternative, do not amount to controlling law.

Appellants do not explicitly raise international comity as an affirmative defense. Instead, they refer to the *Waterfall* decisions as extrinsic evidence that should inform the Court as to the nature of the interest payments outside of the Plan language. And thus, with no party predicating its arguments on

international comity, the Court sees no reason to predicate its decision on same.

In any event, application of principles of international comity would not change the Court's decision, since there is no direct conflict between the *Waterfall* Proceedings' characterization of the statutory interest payments and their definition under the terms of the Plan. The Court has thought carefully of how best to construe the two *Waterfall* decisions that have been cited to it and, ultimately, concludes that the decisions speak authoritatively on the issue of U.K. insolvency law, but not on Plan interpretation. There is no evidence that the U.K. High Court and Supreme Court made their rulings with a view to offering interpretation of Plan terms in the U.S. Proceedings. Their rulings focused on Appellants' Primary Claims against LBIE, and not any Guarantee Claims that Appellants might have against LBHI. Therefore, the courts' characterizations of statutory interest payments do not aid the Court in determining whether those payments qualified as "other consideration provided on the corresponding Primary Claim" under Section 8.13(a). In other words, even if Appellants had asserted international comity as an affirmative defense, this Court finds that there is no conflict between the principles of contract interpretation under New York law addressed by Judge Chapman in the U.S. Proceedings and the conclusions advanced by the U.K. courts in the two *Waterfall* decisions.[12]

---

[12] This Court recognizes that, in reviewing the case *de novo*, it is not bound by any prior Plan interpretations from the U.K. courts or the Bankruptcy Court. That said, to the extent that the U.K. High Court's interpretation of statutory interest payments might be

22

### 3. LBIE's Statutory Interest Payments Qualify as "Other Consideration Provided on the Corresponding Primary Claim"

#### a. Applicable Law

"It is axiomatic under New York law ... that the fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties." *Lockheed Martin Corp.* v. *Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (internal quotation marks and citation omitted). It is well established that the parties' intentions are "generally discerned from the four corners of the document itself." *MHR Capital Partners LP* v. *Presstek, Inc.*, 12 N.Y.3d 640, 645 (2009).

"[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield* v. *Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002). "A contract is unambiguous where the contract's terms have a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *In re Lehman Bros. Inc.*, 478 B.R. 570, 586 (S.D.N.Y. 2012) (quoting *Lockheed Martin Corp.,* 639 F.3d at 69 (internal quotation marks omitted)), *aff'd sub nom. In re Lehman Bros. Holdings Inc.*, 761 F.3d 303 (2d Cir. 2014), and *aff'd sub nom. In re Lehman Bros. Holdings Inc.*, 590 F. App'x 92 (2d Cir. 2015) (summary order); *see* also *SimplexGrinnell LP* v. *Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 189-90 (S.D.N.Y. 2009). Where, however, "'reasonable minds could differ about the meaning of contractual language, such language is ambiguous, ...

---

perceived as being in tension with Judge Chapman's interpretation of Section 8.13, this Court recognizes that Judge Chapman has more familiarity with the Plan.

and the court must turn to extrinsic evidence to determine the parties' intent.'"
*In re Motors Liquidation Co.*, 500 B.R. at 340 (quoting *Lehman Bros.*, 478 B.R.
at 586).

### b. Analysis

To review, Section 8.13 sets forth the conditions under which an Allowed
Claim or a Guarantee Claim may be "deemed satisfied" according to the Plan:

> An … Allowed Claim that receives Distributions … that
> combined with Distributions *or other consideration*
> *provided on the corresponding Primary Claim* … equal
> the Allowed amount of such Guarantee Claim … shall,
> in each case, be deemed satisfied in full as to such …
> Allowed Guarantee Claim against the applicable Debtor.

*Id.* (emphasis added). In the instant appeal, Appellants claim that Judge
Chapman erred in finding that the statutory interest payments qualify because
(i) "consideration" is not simply a general form of payment, but refers to a
bargained-for exchange; and (ii) "provided on" refers to something narrower
than "related to" or "in connection with," such as "paid towards satisfying."
(Appellants Br. 26, 38; Appellants Reply 13). Under this interpretation of the
Disputed Language, Appellants argue that the statutory interest payments may
not be deemed to reduce the Guarantee Claims.

Appellee disagrees and sees "no material difference among Appellants'
proffered phrases (such as "related to" or "in connection with" or "with respect
to") and "provided on" in Section 8.13(a). (Appellee Opp. 29). As set forth in
the remainder of this Opinion, the Court agrees with Appellee that
Section 8.13(a), read in context, defines "consideration" generally as a form of
payment, and "provided on" as any compensation "related to" LBIE's Primary

Claims, all of which are to be included in reducing, and ultimately satisfying, the Guarantee Claims against LBHI.

> ### i. "Other Consideration" Is Synonymous with a "General Form of Payment," Rather Than a "Bargained-for Exchange"

When the Court looks at the four corners of the Plan, it discerns easily that "consideration" does not connote the narrow definition of a bargained-for exchange traditionally associated with contract law, but instead encompasses a broader definition, such as a "general form of payment" that would include LBIE's statutory interest payments. *MHR Capital Partners LP*, 12 N.Y.3d at 645. Accordingly, the Court finds that portion of Appellants' briefing that addresses consideration in the context of contract formation to be inapposite. In order to understand what consideration means, and whether it includes interest payments, the Court looks at the Disputed Language on its own and in conjunction with Section 8.13(c).

*First*, the Court observes that the word "consideration" in Section 8.13(a) is preceded by the phrase "Distributions or other," which suggests that a "Distribution" is just one such form of consideration that may be used to satisfy a Guarantee Claim. (Plan § 8.13(a)). As noted earlier, a Distribution is broadly defined as "any initial or subsequent payment or transfer made under the Plan." (*Id.*). Significantly, however, only certain parties under the Plan may pay Distributions, and thus the term "other consideration" is used in recognition of the fact that certain payments made by parties that do not

qualify as Debtors under the Plan may nonetheless reduce Guarantee Claims by way of dividends on the parties' own Primary Claims.

*Second*, the Court observes that interest qualifies as a Distribution. In arriving at that observation, the Court looks to Section 8.13(c), which specifies when Appellee itself must pay interest on an Allowed Claim:

> To the extent that any Debtor has Available Cash after all Allowed Claims against that Debtor have been satisfied in full in accordance with Section 8.13(a) of the Plan, each holder of each such Allowed Claim shall receive its Pro Rata Share of further Distributions ... in satisfaction of postpetition interest on the Allowed amount of such Claims at the rate applicable in the contract or ... at the statutory rate ... until such time as all postpetition interest on all such Allowed Claims has been paid in full.

(Plan § 8.13(c)). It is clear from this language that "postpetition interest" qualifies as a "Distribution" that is paid "on" an "Allowed Claim." Thus, since interest is one form of Distribution, and since Distribution is one form of consideration, it necessarily follows that interest payments can also qualify as "consideration" under Section 8.13(a).

### ii.  "Provided On" Is Synonymous with "Related To," Rather Than "In Satisfaction Of"

Having determined that the Plan treats interest as a form of consideration, the Court is left with the question of whether the statutory interest payments are "provided on" LBIE's Primary Claims. The Bankruptcy Court found, and this Court agrees, that the words "provided on" mean any consideration that is "related to" the Primary Claims. This means that the

consideration does not need to satisfy or reduce the Primary Claims in order to qualify as being "provided on" those claims.

Appellants disagree with this interpretation, and instead argue that the word "on" should be read narrowly to refer to payment used towards satisfying LBIE's Primary Claim. (Appellants Br. 32-40). However, in Section 8.13(a), the Claims whose satisfaction are in question are not the Primary Claims against LBIE, but the Guarantee Claims against LBHI. (Plan § 8.13(a)). If the parties to the Plan had intended to connote "payment *in satisfaction of* the corresponding Primary Claim," the Plan language would have so stated. Also of note, the Plan uses the term "deemed satisfied" only three times: once in the same sentence as the Disputed Language, once again in the sentence that immediately follows, and once in an inapplicable section addressing the issuance of new securities. From this, it is clear that "provided on" is meant to encompass a broader range of consideration, and one that need not actually satisfy the Primary Claims in order to be considered in satisfaction of the Guarantee Claims. The statutory interest payments, as consideration, qualify as such payments.

### 4. The Bankruptcy Court's Decision Accords with the Single Satisfaction Rule

#### a. Applicable Law

The Court addresses the single satisfaction rule briefly. Derived from Section 550 of the Bankruptcy Code, "[t]he single satisfaction rule is often used to prevent a single plaintiff from recovering its damages several times over from

multiple defendants." *Laborers Local 17 Health & Benefit Fund* v. *Philip Morris, Inc.*, 191 F.3d 229, 241 (2d Cir. 1999), *as amended* (Aug. 18, 1999).

The Second Circuit has explained that Section 550

> prescribes the measure of the trustee's recovery for such avoidable transactions.  It states in relevant part: [T]o the extent that a transfer is avoided under section ... 549 ..., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from — (1) the initial transferee of such transfer[.]"

*In re Bean*, 252 F.3d 113, 116-17 (2d Cir. 2001) (quoting 11 U.S.C. § 550(a)).

However, recovery under § 550(d) is limited:  "[t]he trustee is entitled to only a single satisfaction under subsection (a) of this section."  11 U.S.C. § 550(d). Thus, "Section 550(a) authorizes" a creditor "to pursue recovery from all available sources until the full amount of" the debt is satisfied, but no more. *In re Belmonte*, 2019 WL 3330808, at *6; *see also Freeland* v. *Enodis Corp.*, 540 F.3d 721, 740 (7th Cir. 2008) ("[T]he trustee can recover from any combination of the entities mentioned [in § 550] subject to the limitation of a single satisfaction."); *Aalfs* v. *Wirum (In re Straightline Invs., Inc.)*, 525 F.3d 870, 883 n.3 (9th Cir. 2008) ("Although the statute contains the conjunction or, at least one court has held that the remedies of the value of the property or the property itself are not mutually exclusive, and the bankruptcy court may award a judgment that involves both types of recovery, as long as it does not result in double recovery for the estate." (internal quotation marks and citation omitted)); *Burtrum* v. *Laughlin (In re Laughlin)*, 18 B.R. 778, 781 (Bankr. W.D. Mo. 1982) ("[T]he value of the transferred property should be restored to the

estate, even if composite elements of that value must come from more than one transferee.").

> **b.    Analysis**

The Court's determination that Section 8.13(a) applies to the statutory interest payments — and thus that the Guarantee Claims have been satisfied in full — also informs the Court's decision regarding the single satisfaction rule. Because Appellants have been made whole by LBIE's payments alone, they are, as required by the single satisfaction rule, unable to seek further compensation from Appellee.

Appellants' arguments to the contrary resonate in the abstract, but cannot succeed in light of the Plan interpretation that Judge Chapman used and this Court upholds. While this case is unusual in that it requires the Court to analyze the proceedings in the United States and the United Kingdom, the actual appeal focuses less on bankruptcy law, and more on contract law. Judge Chapman interpreted the Plan using principles of contract law and correctly concluded that the statutory interest paid by LBIE in the U.K. Proceedings qualifies as "other consideration provided on the corresponding Primary Claim" under Section 8.13(a) of the Plan, and as a result, Appellants' Guarantee Claims are deemed satisfied in full.

**CONCLUSION**

For the reasons set forth above, the order of the Bankruptcy Court is affirmed. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close these two cases.

SO ORDERED.

Dated:   August 16, 2019
         New York, New York

_____
        KATHERINE POLK FAILLA
        United States District Judge